**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KSD, INC.<br>Plaintiff,<br>v.<br><br>THE UNITED STATES,<br>Defendant,<br><br>and<br><br>MCDONNELL DOUGLAS<br>HELICOPTER COMPANY,<br>Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-1229C<br>(Judge Horn)<br><br>**BID PROTEST** |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to the Court's order dated December 9, 2005, defendant, the United States, replies to the opposition of KSD, Inc. ("KSD") to defendant's motion to dismiss for lack of subject-matter jurisdiction.

**DEFENDANT'S BRIEF**

**I. As Plaintiff, KSD Carries The Burden Of Demonstrating Jurisdiction**

At the outset, we note that "[t]he party invoking federal jurisdiction bears the burden of proving that standing was present at the time the suit was brought." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). This Court recently explained that "the need to establish standing is not a mere pleading requirement "'but rather an indispensable part of the plaintiff's case.'" As a result, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Night Vision Corp. v. United States, No. 03-1214C, 2005 WL 2995374 (Fed. Cl. Nov. 8, 2005) (quoting Lujan, 504 U.S. at 561). As set forth below, KSD has failed to adduce any evidence demonstrating that it has standing to protest

the procurement at issue in this case.

## II. KSD Is Not Eligible For The Award Of The Contract At Issue Because Of Its Failure To Secure Approval To Manufacture A Strap Pack Assembly That Meets The Army's Requirement

In response to our motion, KSD first asserts that it "possesses the capability to manufacture and produce the redesigned strap pack," and attempts to distinguish Space Exploration Technologies, Inc. v. United States, 68 Fed. Cl. 1 (2005) upon this basis. Pl. Opp. at 3. This argument is fatally flawed.

First and foremost, KSD's argument fails because it confuses abstract manufacturing capability – which KSD may well have gained through its prior experience with AMCOM – with the ability to meet the Army's current requirement for "Fat Boy" strap packs. As detailed in our motion to dismiss, the strap packs the Army needs for its AH-64 helicopter fleet are critical safety items that can only be procured from an approved source. There is no dispute that KSD is not an approved source of the "Fat Boy" strap pack or something that is 100% identical to the "Fat Boy" strap pack. Because, as in Space Exploration, KSD is currently unable to meet the Army's requirement, it lacks standing to pursue this protest.

Second, and relatedly, KSD's suggestion that it has the capability to produce the "Fat Boy" is belied by its recent request that the Army provide it with two "Fat Boy" strap packs, ostensibly so that it can "reverse-engineer" them. AR 255, 791. If, as KSD contends, the differences between the "Jenny Craig" – for which it is an approved source – and the "Fat Boy" are minimal, then KSD may well be able to reverse-engineer the "Fat Boy" and secure approval as a source of an item that is in all relevant respects identical to the "Fat Boy." Until such time,

however, KSD is not able to meet the Government's requirement.[1]

KSD attempts to deflect its inability to provide the goods that the Army needs by suggesting that the acts complained of in its amended complaint are the source of its inability to secure approval. This argument is unavailing for the simple reason that KSD has had since 1999 to take steps to become an approved manufacturer either of a completely new strap pack or a strap pack that is identical to the "Fat Boy." It is undisputed that KSD has voluntarily decided not to take these steps.

With respect to the first option, in 1999, KSD was afforded the same opportunity as Boeing to redesign a strap pack for use in AH-64 helicopters. AR 567-68. Contrary to KSD's assertion in its opposition to our offered to provide to KSD the same assistance it had given to Boeing while Boeing designed the "Fat Boy," including "providing aircraft loads data, support in the development of a new strap pack design, and approval of test plan and results." AR 567-68; <u>see also</u> AR 628-29, 632. KSD opted not to take advantage of this opportunity in 1999 and has not done so in the six years since.

KSD has similarly opted not to become an approved source of a strap pack that is identical to the "Fat Boy." Although other companies have chosen to work with Boeing as sub-vendors, AR 784, KSD has opted not to pursue such a relationship. In addition, notwithstanding its assertion that the differences between the "Jenny Craig" and "Fat Boy" are insubstantial, KSD waited until August 2005, nearly six years after the Army informed it that it could not provide

[1] AMCOM's acquisition plan specifically provides that in the event new sources of critical safety items such as the strap pack are approved, new orders for such items will not be placed under the contemplated IDIQ contract but would instead be competitively acquired. AR 36-37.

technical data concerning the "Fat Boy," to request a sample Fat Boy to reverse-engineer (and waited until November 2005 to file a bid protest in this Court challenging a sole-source procurement that had been occurring since 2001). AR 255, 568, 660. KSD's failure to secure approval as a source of a redesigned strap pack – whether a "Fat Boy" or some other configuration – is not traceable to any missteps committed by AMCOM, either in the 2005 procurement of "Fat Boy" strap packs that is at issue in this case or in any of AMCOM's previous (unchallenged) procurements of these items.

## III. <u>KSD Has Failed To Demonstrate That It Complied With Government-Wide Note 22</u>

In responding to our motion, KSD also has asserted that it complied with Government-wide Note 22, or that its noncompliance with Note 22 should be excused, because (1) a KSD representative has repeatedly visited with the AMCOM Competition Advocate since 2001; and (2) KSD was somehow precluded from submitting a proposal within the meaning of Note 22. Pl. Opp. 7-8.

Neither contention is availing. As to KSD's argument concerning its contacts with the Competition Advocate, plaintiff's opposition to our motion contains no citation to the administrative record, or even to an allegation in its complaint or amended complaint, that reflects these communications. Apparently, KSD relies upon the introductory portion of its amended complaint, in which KSD alleges that its representative has made weekly visits to the Competition Advocate since 2001. Although plaintiff asserts in its opposition that some of these visits took place in the 45 days after Note 22 was published, its amended complaint conspicuously omits reference to the time, date, or specific contents of any of these conversations and is insufficient, standing alone, to satisfy KSD's burden of establishing that it has standing to

bring this protest.[2]

Further, even if the Court credits KSD's allegations that its representative communicated with the Competition Advocate within the 45-day window beginning on May 17, 2005, these allegations do not establish that KSD complied with Note 22. The function of the Competition Advocate is "to promote[] full and open competition in the procurement of property and services by the executive agency." See 41 U.S.C. § 418(c). The Competition Advocate has no contracting authority, id., and KSD has offered no authority to support its contention that a party provides notice to the Government of its interest in capability of performing a sole-source contract by contacting the Competition Advocate. The lack of authority for such a proposition is particularly glaring given that the presolicitation notice (which expressly incorporated Note 22) expressly provided:

---

[2] In Cubic Defense Systems, Inc. v. United States, 45 Fed. Cl. 239, 249-50 (1999), the Court elected to credit plaintiff's allegations concerning the time and content of conversations between a party and the procurement office, which were supported by affidavits. The Court analyzed the claim pursuant to RCFC 12(b)(4) (now designated 12(b)(6)), and specifically noted that "if this point were not being decided on the basis of a motion to dismiss, [it] clearly would not be as indulgent of Cubic's election to communicate its interest orally, rather than in writing." Id. at 250 n.8.

Here, unlike Cubic Defense, KSD has failed to proffer any declarations supporting its allegations and has failed even to allege the date and time of any of the conversations between Mr. McCollum and Mr. Griffin. Further, we have filed our motion to dismiss pursuant to RCFC 12(b)(1), not RCFC 12(b)(6). In responding to such a motion, the nonmoving party bears the burden of establishing jurisdiction with "competent proof." McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); see also Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."). KSD has failed to offer any evidence or even a well-pleaded allegation to support its claim of jurisdiction.

> ****ATTENTION****FORMAL COMMUNICATION RELATED TO THIS ACQUISITION SHOULD BE DIRECTED TO SHERI BASKINS. You may FAX or mail your request ATTN: AMSAM-AC-LM-L, Sheri Baskins, Contracting Officer . . . . NO TELEPHONE REQUEST WILL BE ACCEPTED.

AR 40. It strains credulity to suggest that KSD complied with Note 22 where it disregarded the unambiguous instructions set forth in the presolicitation notice (which called for written communication to the contracting officer) and instead communicated its interests orally and to the wrong office.

Further, KSD's descriptions of the contents of its alleged communications are insufficient to support a finding that it complied with Note 22. As explained in Simula Gov't Prods., Inc., B-274703, 96-2 CPD ¶ 219, 1996 WL 705191, at *1 (Comp. Gen. Dec. 9, 1996), in the case of a procurement for a complex item "an adequate Note 22 response must at least detail the offeror's ability to meet the requirement; what is actually contemplated is a preliminary proposal which could lead the agency to reconsider its source selection decision." At best, KSD's allegations support a finding that it communicated an "interest" in competing to the Competition Advocate. KSD could not possibly have communicated a "capability" of providing "Fat Boys" to AMCOM because it is not an approved source of these items and because it never manufactured or even attempted to manufacture them. Indeed, even KSD's August and September 2005 letters to AMCOM concerning the procurement do not state that it can produce something 100% identical to the "Fat Boy" but instead merely reiterate KSD's view that the "Fat Boy" is a modification of a product that KSD is in fact capable of producing, or that KSD would like to propose either an alternative product or a product that meets the performance parameters of the "Fat Boy." AR 248, 274, 792. Any statement KSD could possibly have made as to its capability to provide the

precise item for which the Government identified a requirement is thus insufficient to establish compliance with Note 22. See Simula, B-274703, 96-2 CPD ¶ 219, 1996 WL 705191 at *2 (protestor failed to comply with Note 22 where it submitted only a conclusory statement of capability and failed to explain how it was capable of providing specific item that Navy wanted, as opposed to a different item that protestor actually manufactured).

Finally, on page 7 of its opposition KSD raises the novel argument that it could not comply with Note 22 because it intended to submit a competitive proposal but was somehow precluded from doing so because the sole-source solicitation provided to Boeing did not have a closing date. This argument is unavailing. First, KSD's statement of its intent to submit a proposal was not submitted until September 21, 2005, long after the 45-day window contemplated by Note 22 (which was posted on May 17, 2005) had expired. Second, KSD's argument wholly misunderstands both the mechanics and the purpose of Note 22. On its face, Note 22 specifically states it is "not a request for competitive proposals." AR 46. Rather, it is designed to "give an agency an opportunity to reconsider its sole-source decision in light of a serious offeror's preliminary proposal." Simula, 1996 WL 705191 at *1 (emphasis added). It is only after the 45-day window has passed that a sole-source solicitation is issued and, as occurred here, AR 140, a single bidder submits a proposal.[3] By this point, the decision to conduct a sole-source procurement has been made, and the time for other parties to express an interest in the procurement has expired.

The requirements of Note 22 are neither ambiguous nor onerous, and KSD acknowledges

[3] An agency must provide a copy of a solicitation issued under other than full and open competition to requesting firms that were not initially solicited, but only after advising the requester of the determination to limit the solicitation to a specified firm. FAR § 5.102(e).

on page 3 of its amended complaint that its principal was "aware of" it. KSD chose not to comply with Note 22's meager requirements and, by virtue of its decision, lacks standing to challenge the procurement at issue in this case.

**CONCLUSION**

For the foregoing reasons, and for the reasons stated in our motion to dismiss, plaintiff lacks standing to challenge the procurement at issue in this case. Accordingly, we respectfully request that plaintiff's amended complaint be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Andrew P. Averbach
ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 353-0527
Fax. (202) 305-2118

Of Counsel:
Patrick Gary
U.S. Army Litigation Center

Wesley G. Smith
AMCOM Legal Office

Dated: December 15, 2005

Attorneys for Defendant