PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

No.05-1229C
Judge Marian Blank Horn
(Bid Protest)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

| | |
|---|---|
| KSD, INC., | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| Defendant, | * |
| | * |
| and | * |
| | * |
| MCDONNELL DOUGLAS HELICOPTER | * |
| COMPANY, | * |
| Defendnant/Intervenor. | * |

---

**PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT-INTERVENOR'S RESPONSE[S] TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

---

Howell Roger Riggs
Dick, Riggs, Miller & Stem, L.L.P.
200 Clinton Avenue West
AmSouth Center, Suite 1050
Huntsville, Alabama 35801
(256) 564-7317

Attorney for the Plaintiff, KSD, Inc.

January 4, 2005

# TABLE OF CONTENTS

PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT-INTERVENOR'S RESPONSE[S] TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD........1

SUMMARY OF REPLY ARGUMENT........1

THE DEFENDANT AND DEFENDANT-INTERVENOR'S RELIANCE ON THE DFARS IS MISPLACED........2

AMCOM HAS ASSERTED THAT THE "FAT BOY" IS A COMMERCIAL ITEM........3

DOCTRINE OF LACHES DOES NOT APPLY........8

IRREPARABLE HARM........10

CONCLUSION........10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| KSD, INC., Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant, and MCDONNELL DOUGLAS HELICOPTER COMPANY, Defendant-Intervenor. | ) | No. 05-1229C-MBH<br><br>PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER |

**PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT-INTERVENOR'S RESPONSE[S] TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Comes now the Plaintiff and hereby replies to Defendant and Defendant-Intervenor's Responses to Plaintiff's Motion for Judgment Upon the Administrative Record and Cross-Motion for Judgment Upon the Administrative Record.

**SUMMARY OF REPLY ARGUMENT**

Both the Defendant and Defendant-Intervenor have filed Responses that are comprised of grossly flawed analyses, and contain a myriad of inconsistencies. In support of their arguments, the Defendant and Defendant-Intervenor have now: (1) resorted to discrediting another government official and his conclusions; (2) relied upon the illusory claim that KSD was

provided the same opportunity to compete as other offerors; (3) erroneously claimed that the government did not assist in funding the cost of development and testing for the "Fat Boy"; and (4) asserted an affirmative defense which both have previously waived.

***The Defendant and Defendant-Intervenor's Reliance On The DFARS Is Misplaced***

The Defendant and Defendant-Intervenor have now switched gears and admit for the first time in this litigation that Boeing was reimbursed for the cost of development. However, now they claim that this reimbursement was proper because the government used independent research and development cost accounts ("IR & D"). (Def-Int. Response p. 27). The Defendant cites DFARS § 225.227-7013 in support of the position that Boeing was lawfully reimbursed such that the "Fat Boy" can still be considered to have been developed at private expense. (Def. Response p. 17). The Defendant relies on the DFARS provision that provides:

> Developed exclusively at private expense means development was accomplished entirely with cost charged to indirect cost pools, **costs not allocated to a government contract,** or any combination thereof.

48 C.F.R. ("DFARS") § 252.227-7013 (a)(7).

Both Defendant and Defendant-Intervenor correctly note that IR & D costs incurred by defense contractors are reimbursable and considered at private expense. (Def. Response p. 17; Def-Int. Response p. 28). The Plaintiff does not take exception to this as the Defendant and Defendant-Intervenor seem to contend. Tellingly, neither Defendant nor Defendant-Intervenor expound on their arguments in order to inform the Court what "independent research" is, or is not. 48 C.F.R. § 31.205-18 defines "independent research and development:"

> Independent research and development (IR & D) means a contractor's IR & D cost that consists of projects falling within the four following areas: (1) Basis research, (2) applied research, (3) development, and (4) systems and other concept formulation studies. The term does not include the costs of effort sponsored by a

> grant or *required in the performance of a contract.* **IR & D effort shall not include technical effort expended in developing and preparing technical data specifically to support submitting a bid or proposal.**

48 C.F.R. § 31.205-18

This definition clearly demonstrates that the IR & D costs do not include the technical effort and data regarding the "Fat Boy."

Not only is the argument that Boeing was, in fact, reimbursed through IR & D freshly revealed to the Court, but also, there is absolutely no mention of IR & D in the Administrative Record. There was no consideration by the Contracting Officer in the record of the applicability of IR & D costs or any examination by the Contracting Officer that these costs were properly applied. The Contracting Officer had no record and made no record of any deliberations of this issue and, consequently, it should be stricken.

If the allegation by Boeing that IR & D was charged, several issues outside the Administrative Record are raised concerning the reasonableness of the cost of development, and the reasonableness of Boeing's reimbursement. These matters, if relevant, should be the subject of further discovery if the Court determines that IR & D costs were recovered.

***AMCOM Has Asserted That The "Fat Boy" Is A Commercial Item***

Not surprisingly, both Defendant and Defendant-Intervenor attempt to downplay the significance of AMCOM's advising Boeing to pursue the "Fat Boy" as a commercial item. First, the Defendant continues to argue that AMCOM "did not and does not" assert that "Fat Boy" is a "commercial item" within the meaning of FAR § 2.101 (b). (Def. Response p. 15). Secondly, the Defendant-Intervenor also alleges that the Army has never considered "Fat Boy" to be a "commercial item" as defined by FAR 2.101. (Def-

Int. Response p. 27). The Army clearly designated the "Fat Boy" as a "commercial product" as early as 2000. (AR 618). Perhaps both the Defendant and Defendant-Intervenor can explain to this Court exactly what authority provides that the FAR definition of "commercial item" does not apply to this federal acquisition. Neither have done so.

Furthermore, both have avoided informing this Court that they agreed to incorporate the definitions of FAR 2.101 as contract clauses into both the 2001 and 2005 contracts. (AR 94, 685). In doing so, both have previously agreed that the definition of "commercial item," under FAR 2.101, applies to the "Fat Boy."

Additionally, the Defendant-Intervenor incorrectly claims that KSD has alleged in its Brief that for an item to be developed at private expense, the item must be a commercial item. (Def-Int. Response p. 27, 28). Defendant-Intervenor cites to KSD's Brief in support of its claim that KSD has made this argument. KSD has never claimed this to be the case and a review of the cite alluded to by the Defendant-Intervenor confirms this fact. This contention is purely one of the Defendant-Intervenor's own making.

The Defendant-Intervenor also claims that whether the "Fat Boy" was designated as commercial or non-commercial is not relevant. (AR 27). This could not be further from the truth. 10 U.S.C. § 2304 5(a) provides that:

> In **no** case may the head of an agency—enter into a contract for property or services **using procedures other than competitive procedures** on the basis of lack of planning or **concerns related to the amount of funds available to the agency for procurement functions...**

As early as 1999, AMCOM confirmed that "...Government funding was not available to pursue the development of a new strap pack." (AR 567). Clearly, this means that AMCOM did

not have the funds for the procurement function of developing the "Fat Boy." Instead, it told Boeing to develop the "Fat Boy" pursuant to "commercialization initiatives." (AR 567). The result: AMCOM entered into the "Fat Boy" contract using other than competitive procedures based upon its concerns related to the amount of funds available to the agency for procurement functions. This was a clear and blatant CICA violation.

This fact is confirmed in Robert Massey's April 3, 2001, memorandum to the competition advocate stating:

> ...it is **overly restrictive of competition** for DOD to avoid providing NRE funds when a new <u>military unique item</u> is needed, and then wait for the private sector to fund the effort calling it a commercialization effort. (AR 646).

Of course, both the Defendant and Defendant-Intervenor now attempt to discredit Mr. Massey because he is an SBA official rather than an AMCOM official. The fact is that Mr. Massey is a "Government" official who reviewed AMCOM information related to the procurement of the "Fat Boy." There is nothing in the record to suggest that Mr. Massey's conclusions are incorrect. Surely, had they been, AMCOM would have some documentation explaining to Mr. Massey exactly why his conclusions were wrong, and based on alleged "misapprehended" facts. However, there is nothing in the record to suggest that this "Government" official, made incorrect conclusions of fact in this regard.

This Court has strenuously relied upon the presumption that federal officials act in good faith. In this case, the government has presented absolutely no evidence that Mr. Massey's factual conclusions are inaccurate, incomplete, or lack good faith. In order to overcome the presumption of good faith with respect to Mr. Massey and his conclusions, the Defendant and Defendant-Intervenor would be held to the same standard that Plaintiff would be held in

attempting to overcome the presumption of good faith. Recently, this Court discussed the doctrine of the Presumption of Good Faith and wrote:

> In 2002, the Federal Circuit stated that "for almost 50 years this court and its predecessor have repeated that we are 'loath to find to the contrary [of good faith], and it takes, and should take, well-nigh irrefragable proof to induce us to do so.'" Am-Pro Protective Agency. Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002) (quoting Schaefer v. United States, 224 Ct. CI. 541, 633 F.2d 945, 948-49 (1980)) (alteration in original); see also Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 ("[W]hen a bidder alleges bad faith, 'in order to overcome the presumption of good faith [on behalf of the government], the proof must be almost irrefragable.'"(quoting Info. Tech.& Applications Corp. v. United States, 316 F.3d at 1323 n.2) (alteration in original); CACI. Inc.-Federal v. United States, 719 F.2d 1567, 1582 (Fed. Cir. 1983) (determining that suspicion and innuendo, and the possibility and appearance of impropriety, without "hard facts" inferring actual misconduct, provide an inadequate basis for withholding award of the contract); Torncello v. United States, 231 Ct. CI. 20, 45, 681 F.2d 756, 770 (1982) (stating "the government.., is assumed always to act in good faith, subject only to an extremely difficult showing by the plaintiff to the contrary.") (citation omitted); Kalvar Corp. v. United States, 211 Ct. CI. 192, 193-94, 543 F.2d at 1298 (1976), cert. denied, 434 U.S. 830 (1977); Librach v. United States, 147 Ct. CI. 605, 612 (1959) (stating that "clear evidence to the contrary" is necessary to overcome the presumption in favor of the government); Four Points by Sheraton v. United States, 63 Fed. CI. 341, 344 (2004) (finding that in order for the protestor to prevail on an allegation of bias and bad faith, it must overcome the presumption of regularity and good faith); Orion Int'l Tech. v. United States, 60 Fed. Cl. 338, 344 (2004) (finding that a court must not inquire into the mental processes of an administrative decision maker without a "strong showing of bad faith") (quoting Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)); Caldwell & Santmyer. Inc. v. Glickman, 55 F.3d 1578, 1581 (1995) (reiterating the principle that "[a] contractor can overcome [the presumption that the government acts in good faith] only if it shows through 'well-nigh irrefragable proof that the government had a specific intent to injure it" (quoting Torncello v. United States, 231 Ct. Cl. at 45, 681 F.2d at 770)); Libertatia Assocs. Inc. v. United States, 46 Fed. CI. 702, 706 (2000) (finding agency official acted with ill will toward plaintiff and manifested specific intent to injure); Hoffman v. United States, 16 Cl. Ct. 406, 410 (1989) (finding that mere contentions of bias do not constitute proof), aff'd, 894 F.2d 380 (Fed. Cir. 1990); Space Age Eng'g, Inc. v. United States, 4 Cl. Ct. 739, 744 (1984) (finding that inferences, suspicion and innuendo are insufficient to fulfill the clear and convincing proof required to show bias on the part of the government) (citing Heyer Prods. Co. v. United States, 135 Ct. Cl. 63, 140 F. Supp. 409, 414 (1956)); China Trade Ctr. v. Washington Metro. Area Transit Auth., 34 F. Supp. 2d 67, 70-71 (D.D.C. 1999), aff'd, 1999 WL 615078 (D.C. Cir. 1999).

> In Am-Pro Protective Agency, Inc. v. United States, the Federal Circuit considered the extent of proof required to demonstrate that the government acted in bad faith and modernized the language of the "well-nigh irrefragable proof" standard, consistent with its "well-established precedent that a high burden must be carried to overcome" the presumption of good faith. Am-Pro Protective Agency, Inc. v. United States, 281 F.3d at 1239. The court determined that the "clear and convincing" standard of proof "most appropriately describes the burden of proof applicable to the presumption of the government's good faith." Id. "Based on this well-established precedent, it logically follows that showing a government official acted in bad faith is intended to be very difficult, and that something stronger than a 'preponderance of evidence' is necessary to overcome the presumption that he acted in good faith, i.e., properly." hi. at 1240; see also Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 ("'Almost irrefragable proof amounts to 'clear and convincing evidence.'" (quoting Am-Pro Protective Agency, Inc. v. United States, 281 F.3d at 1239-40)).[1]

In order for the government to disavow the factual analysis and conclusions of Mr. Massey, it must offer evidence sufficient to overcome Mr. Massey's presumption of good faith and it has failed to do so at any level.

The bottom line is that the Defendant and Defendant-Intervenor's arguments relating to "commercialization" are less than forthcoming, since both adopted the definition of "commercial item" under FAR 2.101, contrary to the assertions in their Responses. Additionally, the significance of designating the "Fat Boy" as a commercial item is clear: AMCOM admittedly did not have the funds to develop the "Fat Boy"; it then designated the item as commercial so that Boeing could develop the "Fat Boy" under commercialization initiatives; then AMCOM entered into contracts with Boeing using other than competitive procedures in violation of 10 U.S.C. § 2304 5(a).

***Doctrine Of Laches Does Not Apply***

[1] The passage quoted was filed by this Court in Cases 04-1573C and 05-582C, Avtel Services, Inc., v. United States and King Aerospace, Inc., Intervenor. The case was filed under seal however the passage contains no protected material. This case is case is filed under seal as well and subject to this Court's protective order.

The Defendant and Defendant-Intervenor have desperately made various procedural arguments in this litigation in an attempt to prevent this Court from ruling on the merits. They have claimed that Plaintiff lacks standing, and that certain documents from 2001 are not relevant and should not be part of the Administrative Record. After being ordered by this Court to provide a complete Administrative Record, it is clear that certain documents from 2001 prove detrimental to the Defendant and Defendant-Intervenor's claims that the "Fat Boy" was developed at Boeing's private expense. Now, in a last ditch effort to prevent this Court from engaging in an in-depth review of those documents, the Defendant and Defendant-Intervenor have raised the affirmative defense of laches in their Response Briefs. (Def. Response p. 31; Def-Int Response pp. 17, 18). However, neither Defendant nor Defendant-Intervenor has raised the affirmative defense of laches in any previous pleading before this Court. Moreover, both Defendant and Defendant-Intervenor have each filed a Motion to Dismiss, and made no mention of the affirmative defense of laches whatsoever.

Presumably, both Defendant and Defendant-Intervenor have raised this affirmative defense pursuant to RCFC 8(c), however neither has even gone so far as to cite this rule in their Response Briefs. This Court has stated that "[n]ormally, under RCFC 8(c), the affirmative defense of laches must be plead in the first responsive pleading or it is deemed waived and excluded. City of Gettysburg, S.D. v. U.S., 64 Fed.Cl. 429, 444 (2005). Both Defendant and Defendant-Intervenor not only fail to cite to RCFC 8(c), but neither provides this Court any reasonable explanation as to why it failed to plead this affirmative defense in its Motion to Dismiss. In light if the intense briefing schedule in this case, and the fact that both Defendant and Defendant-Intervenor could have properly raised this defense in their Motions to Dismiss, and Plaintiff could have likewise fully addressed this defense in its Response to Defendant's

Motion to Dismiss, this Court should deem each to have waived the affirmative defense of laches pursuant to RCFC 8(c).

Assuming the Defendant and Defendant-Intervnor had raised this affirmative defense in a timely fashion, it is still well settled law that "[w]hen a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc. 988 F.2d 1157,1161 (Fed.Cir 1993); (citing Cornetta v. U.S., 851 F.2d 1372, 1377-78 (Fed.Cir.1988) (en banc)). Jurisdiction in the instant case is based on 28 U.S.C. § 1491(b), "which does not limit the time in which a bid protest action may be brought." CW Government Travel, Inc. v. U.S., 61 Fed.Cl 559, 569 (2004). In CW Government Travel, this Court noted that, "[h]ad Congress wanted to set a statute of limitations on bid protest actions, it would have done so. Because Congress did not so limit the jurisdiction of this Court to hear such actions, we would be reluctant to invoke laches except under extraordinary circumstances that are not present in this case." Id.

There are no extraordinary circumstances in the instant case that warrant the Court's invoking laches. Furthermore, this bid protest is based upon a 2005 procurement, and cannot possibly be considered untimely so that laches should apply. The Defendant states that "…to the extent KSD's claims relate to procurement decisions made in 2001 or before, they are barred by the doctrine of laches." (Def. Response Brief p. 31.) The Defendant has also admittedly stated that "…in effectuating this [2005] procurement of spares the Army did not revisit its 2001 determination concerning the relative merits of the "Fat Boy" over the "Jenny Craig" strap pack; it simply took steps to ensure the continued availability of items that it had been purchasing and installing on it helicopters for several years." (Def. Reponse to Plaintiff's Status Report p. 2.) Thus, the decisions behind the 2001 procurement are synonymous with those of the 2005

procurement being protested in this case. Therefore, the Defendant and Defendant-Intervenor's untimely claims that laches should apply to the current bid protest are completely without merit.

***Irreparable Harm***

The Defendant claims that the Plaintiff's devotion of only one paragraph to this element regarding injunctive relief somehow fails to set forth a legally sufficient basis for injunctive relief. While the Defendant may not like or agree with the fact that the law is clear and concise on what is necessary to establish irreparable harm, it still remains that Plaintiff meets this requirement for injunctive relief because irreparable harm may be shown in the "form of the lost opportunity to fairly compete for and perform work under the contract, including but not limited to lost profits that would generate therefrom." Metcalf Constr. Co., Inc., v. U.S., 53 Fed. Cl. 617, 645 (2002). The Plaintiff has satisfied this requirement as it has lost the opportunity to compete for a contract that should not have been sole sourced.

**CONCLUSION**

Based on the foregoing, Plaintiff moves the Court to grant its Motion for Judgment on the Administrative Record and to Deny Defendant and Defendant-Intervenor's Cross Motion and to Grant the Preliminary and Permanent Injunction enjoining the Department of the Army to compete the requirement for the Apache Helicopter Main Rotor Strap Assembly and to Grant Plaintiff such other relief as is reasonable and proper to effectuate competition under the Competition and Contracting Act.

Respectfully submitted,

s/Howell Roger Riggs
DICK, RIGGS, MILLER & STEM, LLC
200 Clinton Avenue West
AmSouth Center
Suite 1050
Huntsville, AL 35801
Telephone: (256) 564-7317
Facsimile: (256) 564-7319

Attorney for Plaintiff