**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KSD, INC., Plaintiff, v. THE UNITED STATES, Defendant, and MCDONNELL DOUGLAS HELICOPTER COMPANY, Defendant-Intervenor. | ) | No. 05-1229C (Judge Horn) **BID PROTEST** |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

Pursuant to the Court's order dated January 19, 2006, defendant, the United States, submits this supplemental brief.

Plaintiff contends in its motion for judgment upon the administrative record that "government reimbursement as a direct or indirect cost of some of the cost of developing an item, component, or process would mean that the item, component, or process was not 'developed at private expense.'" Pl. Br. at 12-13 (ellipses omitted). This argument and the conclusion that KSD seeks to draw from it – that the Government obtained technical data rights in the "Fat Boy" strap pack – are based upon a misapprehension of the relevant legal framework.

The Government obtains only "limited rights," and does not generally obtain the right to use or disclose technical data, with respect to items that are "developed exclusively at private expense." 48 C.F.R. § 227.7103-4(a)(1). The term "developed exclusively at private expense" is specifically defined as "accomplished entirely with costs charged to indirect cost pools, costs not allocated to a government contract or any combination thereof." 48 C.F.R. § 252.227-7013. Thus, contrary to KSD's suggestion, the mere fact that the cost of developing an item may have

been charged to an indirect cost pool in some Government contract does not mean that the item is not "developed exclusively at private expense."

Among the indirect cost pools to which the costs of research and development may be charged is IR&D, which is defined by regulation as

> a contractor's IR&D cost that consists of projects falling within the four following areas: (1) Basis research, (2) applied research, (3) development, and (4) systems and other concept formulation studies. The term does not include the costs of effort sponsored by a grant or required in the performance of a contract. IR&D effort shall not include technical effort expended in developing and preparing technical data specifically to support submitting a bid or proposal.

FAR § 31.205-18(a); see also Department of Defense Directive No. 3204.1, dated May 10, 1999) ¶ 4.2 (Appendix to Defendant's Dec. 27, 2005 Response and Cross-motion at 6) (independent research and development costs incurred by defense contractors are reimbursable as indirect expenses).

In this case, the record makes clear that none of the contracts at issue provide for the reimbursement of the cost of developing the "Fat Boy" as a direct cost. In fact, MDHC internally accounted for the cost of developing the "Fat Boy" as an indirect expense, in the form of independent research and development, which was incurred between 1996 and 2000, before the Army even began purchasing "Fat Boys" from MDHC. Decl. of John Rutherford ¶¶ 4-6, 8.[1] As

[1] MDHC would have violated generally applicable cost accounting standards had it included, without authorization or agreement, the cost of research and development associated with the "Fat Boy," incurred between 1996 and 2000, in calculating the unit price of the "Fat Boy" charged in the 2001 or the current contract. See 48 C.F.R. § 9904.420-40(f)(2) ("The IR&D costs incurred in a cost accounting period shall not be assigned to any other cost accounting period, except as may be permitted pursuant to provisions of existing laws, regulations, and other controlling factors.").

a result, the "Fat Boy" was necessarily "developed exclusively at private expense" within the meaning of 48 C.F.R. § 252.227-7013.

KSD apparently asserts (by placing certain language in boldface on page 4 of its January 4, 2005, reply brief) that the exclusion from the definition of IR&D of "technical effort expended in developing and preparing technical data specifically to support submitting a bid or proposal" demonstrates that IR&D costs "do not include the technical effort and data regarding the 'Fat Boy.'" This argument is unavailing. First, the effort that MDHC expended in designing and qualifying the "Fat Boy" without promise of reimbursement cannot possibly be considered the "develop[ment] and prepar[ation] of technical data to support submitting a bid or proposal." If this were the case, this exclusion – which on its face speaks solely to data to be included specifically to support a proposal, rather than in designing a product – would swallow up the express inclusion in the definition of IR&D (set forth in FAR § 31.205-18(a)) of costs associated with "development" of an item.[2] Further, even if some of these costs could conceivably be classified as "develop[ment] and prepar[ation] of technical data to support submitting a bid or

---

[2] The FAR defines "development" as

> the systematic use, under whatever name, of scientific and technical knowledge in the design, development, test, or evaluation of a potential new product or service (or of an improvement in an existing product or service) for the purpose of meeting specific performance requirements or objectives. Development includes the functions of design engineering, prototyping, and engineering testing. Development excludes: (1) Subcontracted technical effort which is for the sole purpose of developing an additional source for an existing product, or (2) development effort for manufacturing or production materials, systems, processes, methods, equipment, tools, and techniques not intended for sale.

FAR § 31.205-18(a). The design and testing of the "Fat Boy" fit squarely within this definition.

proposal," that portion of the costs still would be classified "bid and proposal costs" within the meaning of FAR § 31.205-18(a) and, had it been charged to a Government contract, would be allowable as an indirect expense pursuant to FAR § 31.205-18(c); see also Department of Defense Directive No. 3204.1, dated May 10, 1999) ¶ 4.2 (Appendix to Defendant's Dec. 27, 2005 Response and Cross-motion at 6) (bid and proposal costs incurred by defense contractors are reimbursable as indirect expenses).

Finally, we note, as we did in our cross-motion for judgment upon the administrative record, that the Contracting Officer expressly certified in 2001 that the anticipated cost of procuring "Fat Boy" strap packs was fair and reasonable based upon an assessment performed using techniques such as price and cost analysis. AR 658. Additionally, the 2001 contract between the parties expressly included those provisions of the DFARS ensuring the regularity of the calculation of costs used to determine the unit price of the "Fat Boy" strap pack. AR 686-87 (incorporating DFARS §§ 52.215-10 ("Price Reduction for Defective Cost or Pricing Data" (Oct. 1997), 52.215-14 ("Integrity of Unit Prices, Alt I" (Oct. 1997)), and 52.230-2 ("Cost Accounting Standards" ("Apr. 1998)). AMCOM has not discovered any irregularity in MDHC's pricing data, and beyond mere conclusory speculation, KSD has not identified any data suggesting that MDHC has been or will be reimbursed for its research and development costs as a direct cost. Under these circumstances, there is simply no basis upon which to conclude that AMCOM has acted irrationally or in a manner contrary to law in awarding the contract for "Fat Boys" upon a sole-source basis.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Andrew P. Averbach
ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 353-0527
Fax. (202) 305-2118

Of Counsel:
Patrick Gary
U.S. Army Litigation Center

Wesley G. Smith
AMCOM Legal Office

Dated: January 27, 2006

Attorneys for Defendant